UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROSALYN HARDY                                              CIVIL ACTION

VERSUS                                                     NO. 22-153-SDD-RLB

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY, ET AL.

## ORDER

Before the Court is Defendants' Motion to Briefly Extend Expert Witness Deadline ("Motion to Extend Deadline") filed on March 23, 2023. (R. Doc. 31). The motion is opposed. (R. Doc. 34). Defendants filed a reply. (R. Doc. 39).

Also before the Court is Plaintiff's Motion to Quash filed on March 24, 2023. (R. Doc. 34).[1] The motion is opposed. (R. Doc. 39).[2]

Also before the Court is the non-parties David G. Ferachi, M.D., Thomas J. Rathmann, D.C., and Barrett Johnston, M.D.'s Motion to Quash and/or for Protective Order filed on March 27, 2023. (R. Doc. 40). The deadline for opposing this motion has not expired. LR 7(f).

Also before the Court is the non-party Baton Rouge Orthopaedic Clinic's ("BROC") Motion to Quash and/or for Protective Order filed on April 4, 2023. (R. Doc. 44). The deadline for opposing this motion has not expired. LR 7(f).

Also before the Court is the non-parties Eric K. Oberlander, M.D. and The Neuromedical Center, AMPC's ("Neuromedical") Motion to Quash and/or for Protective Order filed on April 6, 2023. (R. Doc. 46). The deadline for opposing this motion has not expired. LR 7(f).

---

[1] This motion was filed in conjunction with Plaintiff's Opposition to Defendants' Motion to Extend Deadline.
[2] This opposition was filed in conjunction with Defendants' Reply in Support of Defendants' Motion to Extend Deadline.

I. **Background**

This is a personal injury action involving a motor vehicle accident on or about August 7, 2023. (R. Doc. 1-1). The instant disputes pertains to the timeliness and scope of subpoenas served on four health care providers (Dr. Ferachi, Dr. Rathmann, Dr. Johnston, and Dr. Oberlander), BROC (in which Dr. Ferachi practices), and Neuromedical (in which Dr. Oberlander practices). The individual health care provides have treated Plaintiff, serve as her experts, or both.

New Jersey Manufactures Insurance Company and Quan D. Dunlap (collectively, "Defendants") represent that on August 16, 2021, Plaintiff first initiated treatment with Dr. Rathmann, a chiropractor, who recommended cervical and lumbar MRIs and then referred Plaintiff to pain management with Dr. Johnston. (R. Doc. 31-1 at 1). Defendants represent that Dr. Johnston referred Plaintiff to Dr. Oberlander. (R. Doc. 31-1 at 2). Dr. Oberlander, a neurosurgeon, reviewed Plaintiff's cervical and lumbar MRIs on October 5, 2021, stating, among other things, that she is "a candidate for an ACDF [anterior cervical discectomy with fusion] [at the C5-7 level] at any point should she continue to fail conservative treatment" and also "may need a lumbar surgery someday." (R. Doc. 23-3 at 6). Plaintiff represents that she has had five epidural steroid injections related to her injuries. (R. Doc. 34 at 2). Defendants represent that Dr. Johnson has recommended Plaintiff to receive epidural steroid injections in her lumbar spine for the rest of her life. (R. Doc. 31-1 at 2).

On January 10, 2023, Defendants disclosed to Plaintiff the expert report of Dr. Patrick Juneau. (R. Doc. 23-4 at 1-6; *see* R. Doc. 23-5 at 3). Dr. Juneau opined in his expert report that he did not "see any neural impingement" based on Plaintiff's cervical and lumbar MRIs. (R. Doc. 23-4 at 5). In addition, Dr. Juneau opined that Plaintiff does not need "surgical intervention

2

upon her lumbar spine or upon her cervical spine" or "any further steroid injunctions, such as medial branch blocks or epidurals" given that Plaintiff is "essentially at maximum medical improvement at this point." (R. Doc. 23-4 at 4).

The deposition of Dr. Oberlander took place on January 23, 2023. (R. Doc. 31-3 at 2-3). Plaintiff disclosed Dr. Oberlander as a non-retained expert pursuant to Rule 26(a)(2)(C). (R. Doc. 28 at 2).[3]

On February 2, 2023, Plaintiff informed Defendants that she planned "to retain" a "rebuttal" expert witness, and Defendants objected to any rebuttal report as untimely. (R. Doc. 23-5 at 2-3). The next day, Plaintiff informed Defendants that Dr. Ferachi, an orthopedic surgeon, was the proposed rebuttal expert. (R. Doc. 23-5 at 1). Plaintiff formally identified Dr. Ferachi as the rebuttal expert on February 6, 2023. (R. Doc. 23-6 at 1). Plaintiff's counsel then requested a status conference with the Court.

On February 7, 2023, the Court held a telephone conference with the parties to discuss the parties' dispute on whether, and to what extent, Plaintiff was allowed to disclose an expert rebuttal report (by a newly disclosed expert witness) in response to Defendants' expert report provided on January 10, 2023. (R. Doc. 18). The Court specifically informed "the parties that while the Scheduling Order (R. Doc. 5) does not include a specific expert rebuttal report deadline, Federal Rule of Civil Procedure 26(a)(2)(D)(ii) states that '[a]bsent a stipulation or a court order,' an expert rebuttal disclosure is allowed 'if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.'" (R. Doc. 18 at 1). The

---

[3] It is unclear when or whether Dr. Rathmann or Dr. Johnston were specifically disclosed as experts pursuant to Rule 26(a)(2)(C). There is no dispute, however, that the relevant deadline with respect to the subpoenas at issue is the expert discovery deadline on March 31, 2023. (*See* R. Doc. 5). Accordingly, for the purposes of this motion, the Court will assume that Dr. Rathmann or Dr. Johnston were timely disclosed as experts pursuant to Rule 26(a)(2)(C).

Court also informed the parties that any dispute regarding the scope of the expert rebuttal disclosure could be resolved by filing an appropriate motion after the disclosure is received." (R. Doc. 18 at 3).

Immediately after the telephone conference, Plaintiff provided Defendants with a 1-page expert report by Dr. Ferachi. (R. Doc. 23-6). In relevant part, Dr. Ferachi opines that Plaintiff's cervical MRI shows "evidence of cervical degenerative disc disease with spondylosis from C5 through C7" and that Plaintiff "has worse than right neuroforaminal narrowing at C5-C6, as well as C6-C7." (R. Doc. 23-6 at 3). Dr. Ferachi further opines that if Plaintiff "failed at least three months of conservative care, then she would be a candidate for C5 through C7 anterior cervical discectomy and fusion." (R. Doc. 23-6 at 3).[4]

On February 9, 2023, Defendants provided Plaintiff with the "supplemental" report of Dr. Juneau. (R. Doc. 23-4). In relevant part, this supplemental report provides that based on review of Dr. Oberlander's deposition and explanation of Plaintiff's cervical MRI, Dr. Juneau needed to make "some clarification" of his earlier report to clarify that while he "did not see any neural impingement" at the C5-7 level in his original report, a "more accurate description is that Plaintiff "does not have any impingement upon the spinal cord at that level." (R. Doc. 23-4 at 1).

On February 27, 2023, Defendants sought to strike Dr. Ferachi's expert report, and obtain sanctions, on the basis that the rebuttal report violated the Court's Scheduling Order. (R. Doc. 23). Defendants filed this motion notwithstanding the Court's previous order that Rule 26(a)(2)(D)(ii) controlled the timeline to disclose a rebuttal expert report. (R. Doc. 18). Defendants represent that the deposition of Dr. Johnston took place on March 13, 2023 while the

---

[4] Plaintiff subsequently sought to file Dr. Ferachi's report into the record. (R. Doc. 19). Given that the motion did not present a dispute regarding the contents of the report, the Court denied the motion pursuant to Rule 5(d)(1)(A) of the Federal Rules of Civil Procedure. (R. Doc. 22). In denying the motion, the Court specifically noted that a rebuttal report could be disclosed to Defendants as allowed under Rule 26(a)(2)(D)(ii). (R. Doc. 22).

motion to strike was pending. (R. Doc. 31-1 at 2). The Court denied Defendants' motion to strike Dr. Ferachi's rebuttal expert report on March 14, 2023. (R. Doc. 29). The Court informed Defendants that they may seek to exclude Dr. Ferachi's report after the close of expert discovery through the filing of a motion in limine or Daubert motion with the district judge. (R. Doc. 29 at 12).

On March 14, 2023, the same day that the Court denied the foregoing motion to strike, Defendants issued subpoenas to Dr. Rathmann (R. Doc. 34-1 at 1-6) (seeking the production of 25 categories of documents and electronically stored information on April 3, 2023 in New Orleans, Louisiana); Dr. Johnston (R. Doc. 34-1 at 7-11) (seeking the production of 23 categories of documents and electronically stored information on April 3, 2023 in New Orleans, Louisiana); Dr. Oberlander (R. Doc. 46-2 at 1-3) (seeking the production of 25 categories of documents and electronically stored information on April 3, 2023 in New Orleans, Louisiana), and Neuromedical (seeking the production of 27 categories of documents and electronically stored information on April 3, 2023 in New Orleans, Louisiana).

The next day – on March 15, 2023 – Defendants issued subpoenas to Dr. Ferachi (R. Doc. 34-1 at 17-22) (seeking the production of 27 categories of documents and electronically stored information on April 5, 2023 in New Orleans, Louisiana), BROC (R. Doc. 44-2) (seeking the production of 27 categories of documents and electronically stored information on April 5, 2023 in New Orleans, Louisiana).

Defendants represent that the deposition of Dr. Rathmann took place on March 22, 2023. (R. Doc. 31-1 at 2). The parties have agreed for Dr. Ferachi's deposition to take place on April 11, 2023. (R. Doc. 31-1 at 2).

In relevant part, the Scheduling Order requires expert discovery to be completed by March 31, 2023. (R. Doc. 5). All six subpoenas have dates of compliance set after the close of expert discovery.

On March 23, 2023, Defendants filed the instant Motion to Extend Deadline, which seeks an extension of the expert discovery deadline (March 31, 2023) for the sole purpose of accommodating the dates of compliance (April 3-5, 2023) on the subpoenas at issue. (R. Doc. 31). Among other things, Defendants argue that while taking and preparing for depositions, they obtained "evidence" suggesting "longstanding relationships between Plaintiff's treating doctors and Plaintiff's law firm (as well as their relationships with plaintiff-side, personal injury law firms)." (R. Doc. 31-1 at 3). Defendants characterize the information sought by the subpoenas as relevant for the purposes of establishing the bias of the four health care providers. (R. Doc. 31-1 at 3).

Plaintiff simultaneously opposed Defendants' Motion for Extension and filed a Motion to Quash the subpoenas. (R. Doc. 34). Plaintiff argues that Defendants have not established good cause for the requested extension, further arguing that the deposition testimony of Defendants' own expert demonstrates that there is no bias with respect to the health care providers subject to the subpoenas. (R. Doc. 34 at 5-7). Plaintiff seeks a protective order quashing the subpoenas on the basis that Defendants are attempting to unreasonably delay these proceedings. (*See* R. Doc. 34 at 5, 7-8).

On March 27, 2023, the Court stayed any obligations to respond to the subpoenas pending further order of the Court, and required Plaintiff's counsel to notify Drs. Rathmann, Johnston, Oberlander, and Ferachi of this stay of any obligations to respond to the subpoenas. (R.

6

Doc. 38). The Court also informed the parties that the deposition of Dr. Ferachi may proceed on April 11, 2023, as agreed upon by the parties pursuant to Local Rule 26(d)(1). (R. Doc. 38).

Later that day, Drs. Ferachi, Rathmann, and Johnston filed their Motion to Quash and/or Protective Order. (R. Doc. 40). Drs. Ferachi, Rathmann, and Johnston object to the subpoenas on the basis that they are overly broad and unduly burdensome; they seek personal and confidential information of patients other than Plaintiff; they seek information that is otherwise confidential or privileged; they seek information that is not proportional to the needs of the case not likely to lead to the discovery of admissible evidence; they seek information for which the production would violate the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or other privacy interest; and they are so oppressive as to constitute harassment or annoyance. (R. Doc. 40).

On April 4, 2023, BROC filed its Motion to Quash and/or for Protective Order, which raises similar issues. (R. Doc. 44).

On April 6, 2023, Dr. Oberlander and Neuromedical filed their Motion to Quash and/or for Protective Orde, which also raises similar issues. (R. Doc. 46).

**II.     Law and Analysis**

    **A.     Legal Standards**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within

7

this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction. . . ." Fed. R. Civ. P. 45(d)(1). Similarly, a motion to quash or limit a subpoena is to be considered by the court of compliance. *See* Fed. R. Civ. P. 45(d)(3).

Rule 16(b)(4) of the Federal Rules of Civil Procedure allows for the modification of a scheduling order deadline upon a showing of good cause and with the judge's consent. The Fifth Circuit has explained that a party is required "to show that the deadlines cannot reasonably be

met despite the diligence of the party needing the extension." *Marathon Fin. Ins. Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). In determining whether the movant has established "good cause" for an extension of deadlines, the Court considers four factors: (1) the party's explanation for the requested extension; (2) the importance of the requested extension; (3) the potential prejudice in granting the extension; and (4) the availability of a continuance to cure such prejudice. *See Leza v. City of Laredo*, 496 Fed. App'x 375, 377 (5th Cir. 2012) (citing *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

**B.     Analysis**

There is no dispute that without an extension of the expert report deadline, the discovery sought by the instant subpoenas is untimely. *See* Local Rule 26(d)(2) ("Written discovery is not timely unless the response to that discovery would be due before the discovery deadline. The responding party has no obligation to respond and object to written discovery if the response and objection would not be due until after the discovery deadline."); *see also Sandifer v. Hoyt Archery, Inc.*, No. 12-322, 2015 WL 3465923, at *2 (M.D. La. June 1, 2015) ("Although it was served 4 days before the expert discovery deadline, the subpoena was untimely as it required compliance outside of the March 31, 2015 deadline."); *Dixon v. Greyhound Lines, Inc.,* No. 13179, 2014 WL 6474355, at *3 (M.D. La. Nov. 19, 204) (although it was served 6 days before the expert discovery deadline, the subpoena was untimely as it required compliance outside of the September 2, 2014 deadline."); *see also Hall v. State of Louisiana,* No. 12-657, 2014 WL at 2560715, at *1 (M.D. La. June 6, 2014) (discovery requests served on a party 14 days before a discovery deadline were untimely as the party had 30 days to respond to such discovery requests).

9

Defendants seek an extension of the expert report deadline for the sole purpose of accommodating the dates of compliance on the subpoenas. This relief may be appropriate under certain circumstances. *See Nelson v. Landry*, No. 20-837, 2022 WL 5237898, at *3 (M.D. La. Sept. 16, 2022) (in the interest of managing its docket, the Court found good cause to extend the non-expert deadline for the sole purpose of setting a new deadline for compliance with the subpoenas at issue where the defendant had demonstrated that the information sought is potentially important to the defense in the action, and may even benefit certain plaintiffs, the plaintiffs had sought and obtained two previous extensions of the non-expert deadline, and a continuance of the expert report deadlines was available). In this action, however, the Court does not find that Defendants have established good cause under Rule 16(b)(4) for the extension sought with respect to Drs. Rathmann, Johnston, Oberlander, and Neuromedical. The Court does, however, find good cause for an extension of the expert deadline with respect to Dr. Ferachi and BROC.

The first factor is the party's explanation for the requested extension. Defendants argue that they have adequately explained their need for this brief extension because they "issued the subpoenas after discovery progressed and yielded the issues upon which the subpoenas are based," further noting that they "have diligently participated in discovery." (R. Doc. 31-1 at 6). While conceding that the compliance dates on the subpoenas did not comply with the Court's Scheduling Order, Defendants represent that they did not issue the subpoenas until March 14-15 "because of how discovery developed" and because the Court had not ruled yet on Defendants' pending Motion to Strike the rebuttal report of Dr. Ferachi. (R. Doc. 31-1 at 5). This argument directly contradicts Defendants' assertion in reply that "[w]hile this is not the issue before the Court, it is no secret that Ms. Hardy's counsel routinely engages these treating physicians in

10

other matters." (R. Doc. 39 at 2).[5] Furthermore, as detailed in the ruling denying Defendants' motion to strike, the Court had already informed the parties that Plaintiff would be allowed to disclose a rebuttal report within the scope of Rule 26(a)(2)(D)(ii). (R. Doc. 29). The filing of a motion to strike Dr. Ferachi's rebuttal report is not sufficient explanation for non-compliance with the Court's deadlines with respect to Drs. Rathmann, Johnston, Oberlander, and Neuromedical.

The second factor is the importance of the requested extension. Defendants argue that the information sought by the subpoenas is "critical to permit Defendants to defend against Plaintiff's claims that she will need ESI's for life and a back surgery" given their contention that Plaintiff will not actually get this treatment and that there is lack of medical causation. (R. Doc. 31-1 at 6-7). Defendants further argue that they "are entitled to develop evidence to show, *inter alia*, that her physicians are biased toward injury plaintiffs, frequently relate accidents to injuries, and that plaintiffs frequently do not get the recommended treatment." (R. Doc. 31-1 at 7).

Information regarding the bias and credibility of a witness may fall within the scope of discovery. *See Harris v. Celadon Trucking Servs., Inc.*, No. 18-03317, 2019 WL 13223693, at *4 (E.D. La. Aug. 28, 2019) ("A party clearly has the right to inquire as to the bias or prejudice of any witness."); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-373, 2018 WL 1229752, at *3 (M.D. La. Mar. 9, 2018) ("Evidence regarding witness credibility and potential bias is relevant"). The subpoenas at issue, however, seek in part "documents" evidencing the <u>number</u> of patients for which certain medical treatment was recommended by each of the respective health care providers, and when the patients actually received the recommended treatment for the previous five years. The undersigned has found similar subpoena requests to be overly broad in a personal

---

[5] It is worth noting that Dr. Oberlander was deposed on January 23, 2023. (*See* R. Doc. 31-1 at 2). Defendants do not explain why they then waited nearly two months to issue a subpoena to that particular treating physician and expert.

11

injury lawsuit. In the sole action referenced by Defendants in support of a finding that their subpoenas seek information within the scope of discovery, the undersigned found that a subpoena seeking the entirety of any medical records, charts, bills, and statements for services rendered for any patients for whom a treating physician had recommended cervical neurotomies for certain periods of time over the course of ten years of practice was overly broad. *See Leonard v. IMT Ins. Co.*, No. 19-827, 2021 WL 1015877 (M.D. La. Mar. 16, 2021), *review denied sub nom. Leonard v. Martin*, 2021 WL 3201369 (M.D. La. July 28, 2021), and *appeal dismissed sub nom. Leonard v. Martin*, 38 F.4th 481 (5th Cir. 2022). Even when limited to the identification of the <u>number</u> of patients (as opposed to the production of the underlying documents) the treating physician regularly recommends cervical radiofrequency neurotomies, the Fifth Circuit concluded that this was "only tenuously relevant" and was "disproportionate to any value that the information has with respect to [the treating physician's] credibility given the asserted costs of compliance of approximately $60,000. *See Leonard v. Martin*, 38 F.4th 481, 490 (5th Cir. 2022).

Moreover, Defendants have already had the opportunity to seek information regarding bias and credibility with respect to Drs. Rathmann, Johnston, and Oberlander at their depositions, which were all take prior to the close of expert discovery. These treating physicians were identified, at most, as experts who do not provide expert reports pursuant to Rule 26(a)(2)(C). Defendants have stated that they were able to question Drs. Rathmann, Johnston, and Oberlander regarding potential bias and have otherwise obtained information through independent research:

> Defendants have identified cases in which these doctors have provided testimony, the substance of their testimony, the law firms for which they worked (which includes Plaintiff's law firm), and the types of other physicians involved in the treatment of a patient. . . . Moreover, each doctor admitted in their deposition that most, if not all, of their litigation casework is plaintiff-oriented – which is commensurate with Defendants' research. The doctors also could not state whether they have ever not related an accident to the treatment rendered and future recommended treatment. They admitted that they take referrals from

> plaintiff's law firms, including Plaintiff's law firm. When asked what other doctors are on their list of recommended treatment providers for specialist referrals, each listed doctors who are well-known to be plaintiff-orientated – and which is consistent with the extensive case research conducted by Defendants. They also could not state what percentage of patients are "lost to follow up" or fail to obtain the recommended treatment in the context of litigation.

(R. Doc. 39 at 2 and n.1). Having already had the opportunity to conduct discovery with respect to bias and credibility, the additional information sought by subpoena for the purposes of addressing the bias and credibility of Drs. Rathmann, Johnston, and Oberlander takes on diminished importance.[6] Furthermore, Defendants have sufficiently explained the importance of the other information sought (including the treating physician's prior relationships with Plaintiff's counsel) given that Drs. Rathmann, Johnston, and Oberlander are treating physicians not specifically retained to provide expert testimony.

The third and fourth factors are the potential prejudice in granting the extension and the availability of a continuance to cure such prejudice. Defendants argue that the most critical factor to the Court's analysis is that "Plaintiff will not be prejudiced by the extension." (R. Doc. 31-1 at 7). Defendants further argue that additional pre-trial deadlines may be continued to cure any prejudice to Plaintiff. (R. Doc. 31-1 at 7-8). Plaintiff responds that she will be prejudiced by potential delays in this litigation caused by challenges to the underlying subpoenas by the healthcare providers. (R. Doc. 34 at 6-7).

The Court agrees with Defendants that the extension would not cause any undue prejudice to Plaintiff. In addition, while the Court finds the minimal extension sought would not unduly prejudice these non-party treating physicians, the Court nevertheless concludes that the

---

[6] The Court disagrees with Plaintiff's position that the deposition testimony of Defendants' own expert, Dr. Patrick Juneau, is sufficient to establish that there "is no bias in this case" with respect to Plaintiff's health care providers. (*See* R. Doc. 34 at 6). The district judge will determine, at or before trial, whether and to what extent evidence regarding credibility and bias is admissible.

first and second factors weigh in favor of a finding that Defendants have not established good cause for an extension pursuant to Rule 16(b)(4) with respect to Drs. Rathmann, Johnston, Oberlander, and Neuromedical. The Court similarly finds good cause pursuant to Rule 26(c) to issue a protective order quashing the subpoenas issued to those treating physicians as untimely.

In contrast, the Court finds good cause to extend the deadline to conduct expert discovery with respect to Dr. Ferachi and BROC. In denying Defendants' motion to strike Dr. Ferachi's rebuttal report, the Court specifically informed the parties that they could seek and obtain "a brief continuance of the expert discovery deadline to the extent necessary to complete expert discovery with respect to Dr. Ferachi." (R. Doc. 29 at 10). The Court finds good cause to provide that relief now. While Dr. Ferachi provided his rebuttal report on February 7, 2023, it was reasonable for Defendants to wait until the resolution of the motion to strike prior to serving a subpoena on Dr. Ferachi and BROC. Unlike the other health care providers, Dr. Ferachi has not yet been deposed. In fact, the parties have agreed for his deposition to take place after the close of discovery in this action. Defendants were diligent in seeking additional time to obtain discovery with respect to Plaintiff's rebuttal expert.

Furthermore, unlike the other three health care providers, Dr. Ferachi was specifically identified as a "rebuttal" expert for the sole purpose of providing an opinion "intended <u>solely</u> to contradict or rebut evidence on the same subject matter identified by another party under <u>Rule 26(a)(2)(B)</u>," namely the expert report of the retained expert Dr. Juneau. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). Unlike with Drs. Rathmann, Johnston, and Oberlander, it does not appear that Dr. Ferachi treated Plaintiff prior to his identification as a rebuttal expert.[7]

---

[7] Dr. Ferachi's Motion to Quash originally identified him as a treating physician. (*See* R. Doc. 40-1 at 1). Dr. Ferachi and BROC have clarified the record to provide that Dr. Ferachi was in fact retained as a rebuttal witness by Plaintiff. (R. Doc. 50).

Furthermore, Dr. Ferachi specifically states in his report that he "did not examine" Plaintiff and was asked by Plaintiff's counsel "to review [the cervical] MRI to give [his] opinion" that was "based on imaging review only." (R. Doc. 23-6). Accordingly, Dr. Ferachi's opinion is based solely on a very limited "record review" of a single MRI in response to Dr. Juneau's Rule 26(a)(2)(B) report. The Court finds it appropriate to distinguish Dr. Ferachi (who was disclosed for the sole purpose of providing a rebuttal disclosure in response to a Rule 26(a)(2)(B) expert disclosure) and Drs. Rathmann, Johnston, and Oberlander (who are Plaintiff's treating physicians who, at most, were disclosed as experts who do not provide a written report pursuant to Rule 26(a)(2)(C)).

In sum, the subpoenas issued to Drs. Rathmann, Johnston, Oberlander, and Neuromeidcal are quashed on the basis that they constitute untimely discovery. The Court finds good cause, however, to extend the expert deadline with respect to Dr. Ferachi and BROC for the purposes of finding the subpoenas served on Dr. Ferachi and BROC to be timely. The Court will resolve whether and to what extent those subpoenas must be quashed by separate ruling.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Defendants' Motion to Briefly Extend Expert Witness Deadline (R. Doc. 31) and Plaintiff's Motion to Quash (R. Doc. 34) are **GRANTED IN PART and DENIED IN PART**. The deadline to complete expert discovery with respect to Drs. Rathmann, Johnston, Oberlander, and Neuromedical is expired. Accordingly, Drs. Rathmann, Johnston, Oberlander, and Neuromedical have no duty to respond further to the untimely subpoenas issued to them, which are quashed. The parties shall bear their own costs with respect to these motions.

**IT IS FURTHER ORDERED** that Drs. Rathmann and Johnston's Motion to Quash and/or for Protective Order (R. Doc. 40) is **DENIED as moot**. Dr. Ferachi's Motion to Quash and/or for Protective Order (R. Doc. 40) remains pending.

**IT IS FURTHER ORDERED** that Dr. Oberlander and Neuromedical's Motion to Quash and/or for Protective Order (R. Doc. 46) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Court finds good cause to extend the expert discovery deadline to **May 5, 2023** with respect to Dr. Ferachi and BROC only. This will provide the Court time to adjudicate any remaining disputes regarding the subpoenas served on Dr. Ferachi and BROC. To accommodate this extension, the Court will extend the deadline to file dispositive motions and Daubert motions (with respect to any experts) to **June 2, 2023.** All other deadlines, including the settlement conference set for May 2, 2023, remain unchanged.

**IT IS FURTHER ORDERED** that Defendants shall file any opposition to Dr. Ferachi's Motion to Quash and/or for Protective Order (R. Doc. 40) and BROC's Motion to Quash and/or for Protective Order (R. Doc. 44) on or before **April 17, 2023.**

Signed in Baton Rouge, Louisiana, on April 11, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**