## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ROSALYN HARDY**                                        **CIVIL ACTION**

**VERSUS**                                               **NO. 22-153-SDD-RLB**

**NEW JERSEY MANUFACTURERS**
**INSURANCE COMPANY, ET AL.**

### ORDER

Before the Court is David G. Ferachi, M.D.'s Motion to Quash and/or for Protective Order (R. Doc. 40) and Baton Rouge Orthopaedic Clinic's ("BROC") Motion to Quash and/or for Protective Order (R. Doc. 44). Dr. Ferachi and BROC filed a Supplemental Memorandum. (R. Doc. 50). The motions are opposed. (R. Doc. 54). Dr. Ferachi and BROC filed a Reply Memorandum. (R. Doc. 58).

**I.    Background**

This is a personal injury action involving a motor vehicle accident on or about August 7, 2021. (R. Doc. 1-1). The instant dispute pertains to the scope of subpoenas served on Dr. Ferachi and BROC, in which Dr. Ferachi practices. The Court has previously extended the expert discovery deadline for the purpose of finding the instant subpoenas to be timely. (R. Doc. 52 at 16).

New Jersey Manufacturers Insurance Company and Quan D. Dunlap (collectively, "Defendants") have represented that on August 16, 2021, Plaintiff first initiated treatment with Dr. Thomas Rathmann, a chiropractor, who recommended cervical and lumbar MRIs and then referred Plaintiff to pain management with Dr. Barrett Johnston. (R. Doc. 31-1 at 1; R. Doc. 54 at 1-2). Defendants represent that Dr. Johnston referred Plaintiff to Dr. Eric Oberlander. (R. Doc. 31-1 at 2). Dr. Oberlander, a neurosurgeon, reviewed Plaintiff's cervical and lumbar MRIs on

October 5, 2021, stating, among other things, that she is "a candidate for an ACDF [anterior cervical discectomy with fusion] [at the C5-C7 level] at any point should she continue to fail conservative treatment" and also "may need a lumbar surgery someday." (R. Doc. 23-3 at 6). Plaintiff represents that she has had five epidural steroid injections related to her injuries. (R. Doc. 34 at 2). Defendants represent that Dr. Johnson has recommended Plaintiff to receive epidural steroid injections in her lumbar spine for the rest of her life. (R. Doc. 31-1 at 2; R. Doc. 54 at 2).

On January 10, 2023, Defendants disclosed to Plaintiff the expert report of Dr. Patrick Juneau. (R. Doc. 23-4 at 1-6; *see* R. Doc. 23-5 at 3). Dr. Juneau opined in his expert report that he did not "see any neural impingement" based on Plaintiff's cervical and lumbar MRIs. (R. Doc. 23-4 at 5). In addition, Dr. Juneau opined that Plaintiff does not need "surgical intervention upon her lumbar spine or upon her cervical spine" or "any further steroid injunctions, such as medial branch blocks or epidurals" given that Plaintiff is "essentially at maximum medical improvement at this point." (R. Doc. 23-4 at 4).

On February 2, 2023, Plaintiff informed Defendants that she planned "to retain" a "rebuttal" expert witness, and Defendants objected to any rebuttal report as untimely. (R. Doc. 23-5 at 2-3). The next day, Plaintiff informed Defendants that Dr. Ferachi, an orthopedic surgeon, was the proposed rebuttal expert. (R. Doc. 23-5 at 1). Plaintiff formally identified Dr. Ferachi as the rebuttal expert on February 6, 2023. (R. Doc. 23-6 at 1). There is no dispute that Dr. Ferachi was retained by Plaintiff solely to provide a rebuttal to Dr. Juneau's report, and has not treated Plaintiff. (R. Doc. 50).

On February 7, 2023, Dr. Ferachi provided Defendants with a 1-page rebuttal report opining that Plaintiff's cervical MRI shows "evidence of cervical degenerative disc disease with

spondylosis from C5 through C7" and that Plaintiff "has worse than right neuroforaminal narrowing at C5-C6, as well as C6-C7." (R. Doc. 23-6 at 3). Dr. Ferachi further opines that if Plaintiff "failed at least three months of conservative care, then she would be a candidate for C5 through C7 anterior cervical discectomy and fusion." (R. Doc. 23-6 at 3).[1] The Court has held that the rebuttal disclosure was timely pursuant to Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure, although the scope of the expert rebuttal disclosure could be challenged by the filing of an appropriate motion in limine or Daubert motion before the district judge. (R. Docs. 18, 29).

On February 9, 2023, Defendants provided Plaintiff with the "supplemental" report of Dr. Juneau. (R. Doc. 23-4). In relevant part, this supplemental report provides that based on review of Dr. Oberlander's deposition and explanation of Plaintiff's cervical MRI, Dr. Juneau needed to make "some clarification" of his earlier report to clarify that while he "did not see any neural impingement" at the C5-7 level in his original report, a "more accurate description is that Plaintiff "does not have any impingement upon the spinal cord at that level." (R. Doc. 23-4 at 1).

On March 15, 2023,  Defendants issued subpoenas to Dr. Ferachi (R. Doc. 34-1 at 17-22) (seeking the production of 27 categories of documents and electronically stored information on April 5, 2023 in New Orleans, Louisiana) and BROC (R. Doc. 44-2) (seeking the production of 27 categories of documents and electronically stored information on April 5, 2023 in New Orleans, Louisiana). These subpoenas are the subject of the instant motions.

---

[1] Plaintiff subsequently sought to file Dr. Ferachi's report into the record. (R. Doc. 19). Given that the motion did not present a dispute regarding the contents of the report, the Court denied the motion pursuant to Rule 5(d)(1)(A) of the Federal Rules of Civil Procedure. (R. Doc. 22). In denying the motion, the Court specifically noted that a rebuttal report could be disclosed to Defendants as allowed under Rule 26(a)(2)(D)(ii). (R. Doc. 22).

On March 27, 2023, the Court stayed any obligations to respond to the subpoenas pending further order of the Court, and required Plaintiff's counsel to notify Dr. Ferachi of this stay of any obligations to respond to the subpoenas. (R. Doc. 38). The Court also informed the parties that the deposition of Dr. Ferachi may proceed on April 11, 2023, as agreed upon by the parties pursuant to Local Rule 26(d)(1). (R. Doc. 38).

Through the instant motions, Dr. Ferachi and BROC seek an order quashing the subpoenas served upon on them on the bases that they are overly broad and unduly burdensome; they seek personal and confidential information of patients other than Plaintiff; they seek information that is otherwise confidential or privileged; they seek information that is not proportional to the needs of the case not likely to lead to the discovery of admissible evidence; they seek information for which the production would violate the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or other privacy interest; and they are so oppressive as to constitute harassment or annoyance. (R. Docs. 40, 44).[2]

## II.    Law and Analysis

### A.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within

---

[2] Drs. Rathmann and Johnson co-filed the Motion to Quash and/or for Protective Order filed by Dr. Ferachi. (*See*. R. Doc. 40). The Court quashed the motions served upon those treating physicians as untimely. (R. Doc. 52).

this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction. . . ." Fed. R. Civ. P. 45(d)(1). Similarly, a motion to quash or limit a subpoena is to be considered by the court of compliance. *See* Fed. R. Civ. P. 45(d)(3).

## B.    Analysis

Having considered the arguments of the parties, the Court finds good cause to issue a

protective order quashing, in part, the subpoenas at issue to protect Dr. Ferachi and BROC from

undue burden and expense. *See* Fed. R. Civ. P. 26(c)(1).

In response to Dr. Ferachi's 1-page rebuttal report, Defendants served subpoenas seeking

the production of the following 27 categories of documents and electronically stored information

from Dr. Ferachi and BROC:

(1)    Documents evidencing the number of all patients referred to You by
Dudley Debosier Injury Attorneys, along with their alleged injur(ies) (you
may redact personal identifying information, such as names, dates of birth,
addresses, and social security numbers) in the previous 5 years;

(2)    Documents evidencing all patients referred to You by Dudley Debosier
Injury Attorneys, along with their alleged injur(ies) (you may redact
personal identifying information, such as names, dates of birth, addresses,
and social security numbers) in the previous 5 years;

(3)    Documents evidencing payments made by Dudley Debosier Injury
Attorneys to You in the previous 5 years;

(4)    Documents evidencing all referral agreements between You and Dudley
Debosier Injury Attorneys in the previous 5 years;

(5)    Documents evidencing all contracts between You and Dudley Debosier
Injury Attorneys in the previous 5 years;

(6)    Documents evidencing payments made by any and all plaintiff personal
injury law firms to You in the previous 5 years;

(7)    Documents evidencing plaintiff attorney-negotiated bill reductions agreed
to by You in the previous 5 years;

(8)    Documents evidencing attorney-negotiated bill reductions with Dudley
Debosier Injury Attorneys agreed to by You in the previous 5 years;

(9)    Documents evidencing all referral agreements between You and any and
all plaintiff personal injury law firms in the previous 5 years;

(10)    Documents evidencing all referral agreements between You and defense law firms in the previous 5 years (i.e. retained expert witnessing, independent medical examinations, second medical opinions, functional capacity examinations, etc.);

(11)    Documents evidencing payments made by any and all plaintiff personal injury firms to You in the previous 5 years;

(12)    Documents evidencing Your trial appearances in the previous 5 years;

(13)    Documents evidencing Your deposition appearances in the previous 5 years;

(14)    Documents evidencing the number of patients for which you recommended no further treatment with You after your initial consultation in the previous 5 years;

(15)    Documents evidencing the number of patients referred to You by Dudley Debosier Injury attorneys for which you recommended no further treatment with you after your initial consultation in the previous 5 years;

(16)    Documents evidencing the number of patients for which you recommended no further treatment with any medical provider after your initial consultation in the previous 5 years;

(17)    Documents evidencing the number of patients referred to You by Dudley Debosier Injury attorneys for which you recommended no further treatment any medical provider after your initial consultation in the previous 5 years;

(18)    Documents evidencing the number of patients for which you recommended physical therapy, chiropractic treatment, epidural steroid injections, and/or a spine surgery (including, but not limited to a C5-C7 ACDF) in the previous 5 years;

(19)    Documents evidencing the number of patients referred to You by Dudley Debosier Injury attorneys for which you recommended physical therapy, chiropractic treatment, epidural steroid injections, and/or a spine surgery (including, but not limited to a C5-C7 ACDF) in the previous 5 years;

(20)    Documents evidencing the number of patients for which you did not recommend physical therapy, chiropractic treatment, epidural steroid injections, and/or a spine surgery (including, but not limited to a C5-C7 ACDF) in the previous 5 years;

(21)    Documents evidencing the number of patients referred to You by Dudley Debosier Injury attorneys for which you did not recommend physical therapy, chiropractic treatment, epidural steroid injections, and/or a spine surgery (including, but not limited to a C5-C7 ACDF) in the previous 5 years;

(22)    Documents evidencing the number of patients for which you recommended physical therapy, chiropractic treatment, epidural steroid injections, and/or a spine surgery (including, but not limited to a C5-C7 ACDF) and the patient actually received the recommended treatment, in the previous 5 years;

(23)    Documents evidencing the number of patients referred to You by Dudley Debosier Injury attorneys for which you recommended physical therapy, chiropractic treatment, epidural steroid injections, and/or a spine surgery (including, but not limited to a C5-C7 ACDF) and the patient actually received the recommended treatment, in the previous 5 years;

(24)    Documents evidencing the number of patients for which you recommended physical therapy, chiropractic treatment, epidural steroid injections, and/or a spine surgery (including, but not limited to a C5-C7 ACDF), and the patient did not receive the recommended treatment, in the previous 5 years;

(25)    Documents evidencing the number of patients referred to You by Dudley Debosier Injury attorneys for which you a consultation with physical therapy, chiropractic treatment, epidural steroid injections, and/or a spine surgery (including, but not limited to a C5-C7 ACDF), and the patient did not receive the recommended treatment, in the previous 5 years;

(26)    All communications that You had with Dudley Debosier Injury Attorneys, Lidia Conine, Amber Lorio, and/or their staff related to Rosalyn Hardy DOB 01/08/1974; SSN: XXX-XX-4188; and

(27)    All documents supplied to You by Dudley Debosier Injury Attorneys and/or Rosalyn Hardy prior to, or during the course of, Your treatment of Hardy.

(R. Doc. 40-2 at 4-6; R. Doc. 44-2 at 4-6). Defendants withdrew Category Nos. 12-25 with

respect to the subpoena served on BROC. (R. Doc. 44 at 2 n.1).

Dr. Ferachi and BROC have stated they have no objection to the "requests for documents

that are part of Rosalyn Hardy's medical chart maintained in the regular course of business,

specifically item nos. 26 and 27 of the Subpoena[s]." (R. Doc. 40-1 at 2 n.1; R. Doc. 44-1 at 2 n.1). These categories seek limited information relevant to the plaintiff in this action. Accordingly, the Court will not quash the subpoenas with respect to those two categories. To the extent Dr. Ferachi and BROC have not provided the documents and electronically stored information sought by these two categories, they must provide complete responses within **7 days** of the date of this Order.

The Court will not, however, require Dr. Ferachi and BROC to provide any responses with respect to the remaining categories of information sought. Requiring Dr. Ferachi and BROC to respond to the remaining overly broad categories of document requests would subject them to undue burden and expense.

Defendants argue that the remaining categories of documents sought fall within the scope of discovery because evidence of expert witness bias and credibility is relevant and proportional to the needs of the case. Information regarding the bias and credibility of a witness may fall within the scope of discovery. *See Harris v. Celadon Trucking Servs., Inc.*, No. 18-03317, 2019 WL 13223693, at *4 (E.D. La. Aug. 28, 2019) ("A party clearly has the right to inquire as to the bias or prejudice of any witness."); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-373, 2018 WL 1229752, at *3 (M.D. La. Mar. 9, 2018) ("Evidence regarding witness credibility and potential bias is relevant."). The subpoenas at issue, however, seek in part "documents" evidencing the <u>number</u> of patients for which certain medical treatment was recommended by Dr. Ferachi, and when the patients actually received the recommended treatment for the previous five years. The undersigned has found similar subpoena requests to be overly broad in a personal injury lawsuit where the subpoena sought the entirety of any medical records, charts, bills, and statements for services rendered for any patients for whom a treating physician had

recommended cervical neurotomies for certain periods of time over the course of ten years of practice. *See Leonard v. IMT Ins. Co.*, No. 19-827, 2021 WL 1015877 (M.D. La. Mar. 16, 2021), *review denied sub nom. Leonard v. Martin*, 2021 WL 3201369 (M.D. La. July 28, 2021), and *appeal dismissed sub nom. Leonard v. Martin*, 38 F.4th 481 (5th Cir. 2022). Even when limited to the identification of the <u>number</u> of patients (as opposed to the production of the underlying documents) the treating physician regularly recommends cervical radiofrequency neurotomies, the Fifth Circuit concluded that the information was "only tenuously relevant" and was "disproportionate to any value that the information has with respect to [the treating physician's] credibility given the asserted costs of compliance of approximately $60,000. *See Leonard v. Martin*, 38 F.4th 481, 490 (5th Cir. 2022).

Notwithstanding the conclusions reached by the Fifth Circuit in the *Leonard* decision, Defendants now urge the Court to require full responses to similarly broad document requests made in a subpoena served on a non-party expert:

> Defendants are aware of the Fifth Circuit's *Leonard* opinion, cited at 38 F.4th 481 (2022). Undersigned also read this opinion – and all briefing – prior to issuing the subpoenas, as well. As explained below, Defendants submit that (1) the Fifth Circuit's opinions regarding the substance of the *Leonard* subpoena are non-controlling *dicta*, (2) the Fifth Circuit recognized that it had to defer to the "wide discretion" of the district court to manage discovery, (3) the Fifth Circuit's reasoning was incorrect, and this Court's reasoning was correct, and (4) the facts and circumstances of the present matter – especially the record evidence supporting bias, the damages at issue, the dubious nature of the doctors' affidavits, and the law presented – are different than what was presented to the Fifth Circuit in *Leonard*. Thus, the Court should not, and need not, follow the Fifth Circuit's suggestions in *Leonard*.

(R. Doc. 54 at 3 n. 10). The Court declines this invitation to conclude that the Fifth Circuit's reasoning was incorrect in *Leonard* or that the Fifth Circuit's findings in *Leonard* should otherwise be ignored for the purposes of resolving the instant motions.

Here, Defendants have served subpoenas with categories of document requests (Categories Nos. 1 and 14-25) seeking the production of documents "evidencing the number" of patients for which certain treatment was or was not recommended, or of referrals of the law firm representing Plaintiff. As discussed above, the Fifth Circuit has instructed the Court that an order requiring an expert to produce the ultimate "number" of patients is overly burdensome. *Leonard*, 38 F.4th 481. Similarly, requiring Dr. Ferachi and BROC to search their records and produce the underlying documents sought for the sole purpose of providing potential statistical evidence to undermine Dr. Ferachi's bias and credibility would be overly burdensome and disproportionate to the needs of this case.

Indeed, Dr. Ferachi has provided an affidavit stating that BROC does not track, maintain, or separate list information such as "what patients were recommended and/or received certain types of treatment or duration of treatment," "all sources of patient referrals, or the charges or revenue from treatment of such patients," "what patients were referred by any law firm, or the charges, reductions, or revenue from treatment of such patients," or "what patients provided any form of a guarantee for payment of medical services, or the charges or revenue from treatment of such patients." (R. Doc. 44-3 at 1-3). Requiring Dr. Ferachi or BROC to compile documents containing this information for the purposes of developing statistical information (regardless of whether Dr. Ferachi or BROC provide an ultimate tally of patients would run counter to the findings set forth in *Leonard*, 38 F.4th 481. Compliance with these overly broad requests would subject Dr. Ferachi and BROC to undue burden. Furthermore, Dr. Ferachi estimates that this review would require him to spend at least 30 minutes reviewing over 4,000 individual patient charts at his standard fee of $2,000.00 per hour (*i.e.*, over $4 million). (*See* R. Doc. 44-3 at 4).

Even if this is a gross overestimate of the potential costs involved, the Court finds these estimates provided by Dr. Ferachi, under penalty of perjury, to be significant.[3]

Another category of document requests (Category Nos. 6-7, 9-13) seek, in general, referral agreements with respect to any law firms within the past 5 years, as well as documents evidencing Dr. Ferachi's trial and deposition appearances in the past five years. The Court will not require Dr. Ferachi or BROC to provide this information in this action. Foremost, the time temporal period for the requests is overly broad, given that the expert disclosure requirements of the Federal Rules of Civil Procedure only require a testifying expert to provide "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). The Court will not, without more, order the production of documents evidencing an even greater time period of information with respect to law firm retentions, deposition appearances, and trial appearances than what is required by the Federal Rules.

As part of his expert disclosures, Dr. Ferachi produced his deposition testimony history since 2014. (R. Doc. 54-5). Defendants also represent that Dr. Ferachi testified at his deposition "that he primarily conducts defense IME's." (R. Doc. 54 at 5). Defendants also represent their attorneys have conducted research on Dr. Ferachi indicating that he has been identified as a treating physician or expert at least 19 times for a plaintiff in a lawsuit. (R. Doc. 54 at 7). While Defendants have had an opportunity to depose Dr. Ferachi on his previous experience as a retained expert, including as an expert for plaintiffs, Defendants have not provided the Court with any deposition testimony indicating such previous engagements. There may be

---

[3] BROC's counsel more reasonably estimates the prospective review to "range in the tens of thousands of dollars for BROC as a multi-physician practice." (R. Doc. 44-1 at 10).

circumstances where an expert's engagement with law firms not involved in the case at hand or

with opinions involving similar injuries and treatment of other patients not at issue would fall

within the scope of discovery. Here, however, the requests are overly broad. Defendants made no

attempt to narrow the requests to specific retention agreements or testimony that might bear upon

Dr. Ferachi's 1-page rebuttal report in this action. Even if the requests seek potentially relevant

information regarding bias and credibility, the requests are disproportionate to the needs of this

case.

       The remaining categories of documents sought (Category Nos. 2-5, 8) seek information

for the past 5 years with respect to Dr. Ferachi's (or BROC's) previous relationships with Dudley

Debosier, the specific law firm representing Plaintiff in this action. Dr. Ferachi has stated, under

penalty of perjury, the following:

> BROC and [Dr. Ferachi] do not have any contract or agreement that could be
> defined as a referral agreement or contract with Dudley Debosier [or any other
> law firm]. To the extent these terms could be defined as including letters of
> guarantee of payment, such documents, when they exist, are patient-specific
> letters that are only located in the patients' respective medical records.
> Identification and production . . . would require a manual review of every
> patient's chart.

(R. Doc. 44-3 at 3-4). Accordingly, Dr. Ferachi has represented that there are no "referral

agreements" or "contracts" to be produced in response to Category Nos. 4-5. With respect to the

remaining categories, Dr. Ferachi has represented that a review of each patient's respective

medical records would be required to produce any financial information regarding Dudley

Debosier. Again, despite having had the opportunity to depose Dr. Ferachi and conduct their own

research regarding Dr. Ferachi's prior testimony in legal actions, Defendants do not identify any

other action where Dr. Ferachi was retained by Dudley Debosier to provide an opinion regarding

the same injuries and recommendations at issue in this action. The Court finds that under the

circumstances of this case, Dr. Ferachi and BROC would be unduly burdened if ordered to review all of their patient records to produce the information sought by Defendants.

III.    **Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Dr. Ferachi's Motion to Quash and/or for Protective Order (R. Doc. 40) and BROC's Motion to Quash and/or for Protective Order (R. Doc. 44) are **GRANTED** in accordance with the terms of this Order. Dr. Ferachi and BROC shall produce documents and electronically stored information responsive to Category Nos. 26-27 within **7 days** of the date of this Order if not already provided. Dr. Ferachi and BROC need not respond further to any of the other categories of documents sought by the subpoenas.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on June 1, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**